**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ALBERT WEATHERS,**

                            **Plaintiff,**

    v.                                                      9:12-CV-0982
                                                                   (MAD/CFH)

**D. UHLER, et al.,**

                              **Defendants.**

---

APPEARANCES:                                OF COUNSEL:

ALBERT WEATHERS
10-B-0094
Coxsackie Correctional Facility
Box 999
Coxsackie, New York 12051
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**          JAMES SEAMAN, AAG
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**MAE A. D'AGOSTINO**
**United States District Judge**

## DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Albert Weathers commenced this action by filing a pro se complaint, together with an application to proceed *in forma pauperis*. *See* Dkt. No. 1; Dkt. No. 2 ("IFP Application"). By Decision and Order filed October 15, 2012, Plaintiff's IFP application was granted. *See* Dkt. No. 6 (the "October Order"). Following review of the complaint in accordance with 28 U.S.C. §§ 1915(e) and 1915A(b), the Court (1) dismissed without prejudice Defendant Rock and all claims against him; and (2) dismissed without prejudice some of the claims against Defendant Uhler, but

directed service upon Defendant Uhler with respect to the remaining claims. *See generally* Dkt. No. 6. Currently before the Court is Plaintiff's amended complaint. *See* Dkt. No. 9.

## II. DISCUSSION

A.  **The Original Complaint and the October Order**

Plaintiff's complaint asserted sixteen causes of action against Defendants. *See* Dkt. No. 1 at 44-50. Upon review, and construing Plaintiff's complaint liberally, Plaintiff's complaint was found to assert the following claims: (1) a First Amendment retaliation claim against Defendant Uhler (Count 1); (2) an Eighth Amendment claim that Defendant Uhler was deliberately indifferent to Plaintiff's serious medical needs and/or subjected Plaintiff to cruel and unusual punishment (Count 2); (3) a Fourteenth Amendment claim that Defendant Uhler denied Plaintiff due process when he "put plaintiff on a Deprivation Box for [ ] 120 days without a cause or disciplinary infraction" (Count 3); (4) a Fourteenth Amendment claim that Defendant Uhler denied Plaintiff due process at his Tier III hearing (Counts 4-13); and (5) a claim that Defendant Rock failed to correct Defendant Uhler's alleged wrongdoing (Counts 14-16). *See* Dkt. No. 6 at 6.

The October Order dismissed Defendant Rock and all claims against him without prejudice; dismissed Counts 4 though 16 without prejudice for failure to state a claim upon which relief can be granted; and directed service upon Defendant Uhler with respect to the claims set forth in Counts 1, 2, and 3. *See id.* at 12.

B.  **Review of the Amended Complaint**

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) was discussed at length in the October

2

Order and it will not be restated in this Decision and Order. *See* Dkt. No. 6 at 2-5.

Plaintiff's amended complaint, which asserts claims arising out of his confinement at Upstate Correctional Facility ("Upstate C.F."), is based upon substantially the same factual allegations which were set forth in his original complaint, with a few additions.[1] *See generally* Dkt. No. 9. Plaintiff names the following as Defendants: Donald Uhler, the Deputy Superintendent of Security at Upstate C.F.; David Rock, the Superintendent of Upstate C.F.; Brian Fischer, the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); Lawrence LaBarge, a correctional officer at Upstate C.F.; and Albert Prack, the Director of Special Housing for DOCCS. *See id*. at 1-3.

The facts are set forth as alleged by Plaintiff in his amended complaint. On January 10, 2012, while Plaintiff was incarcerated at Fishkill Correctional Facility ("Fishkill C.F."), he had a disagreement with Sergeant Carbone, which was the result of "past issues" between Plaintiff and Carbone, namely a grievance Plaintiff had filed against Carbone in 2011. *See* Dkt. No. 9 at 3-5. Sergeant Carbone accused Plaintiff of threatening him, and trying to urinate on him. *See id*. at 4-5. Plaintiff received a misbehavior report, charging him with, among other things, violent conduct, creating a disturbance, and an unhygienic act.[2] *See id*. at 14-16. Thereafter, Plaintiff was transferred from Fishkill C.F. to Upstate C.F., and he was told that all of his misbehavior reports at Fishkill C.F. would be cleared to allow for his transfer. *See id*. at 5-6. When leaving Fishkill C.F., one of the correctional officers told Plaintiff that Defendant Uhler had been notified of Plaintiff's misconduct. *See id*. at 6.

---

[1] Plaintiff refers to multiple exhibits which were not attached to, or submitted with, the amended complaint.

[2] Plaintiff did not actually receive this misbehavior report until after he was transferred out of Fishkill C.F. to Upstate C.F. *See* Dkt. No. 9 at 14.

3

When Plaintiff arrived at Upstate C.F. at approximately 7:30 p.m. on January 10, 2012, several unidentified correctional officers made "comments about what happened to other inmates who threatened staff." *See id*. at 6-7. Plaintiff was brought to his cell about thirty minutes after his arrival at Upstate C.F. *See id.* at 6-8. When Plaintiff arrived at his new cell, he checked under his mattress "for any contraband" and noticed that the mattress was "extra heavy." *See id*. at 8. When he lifted the mattress, water poured out at the seams and at the end of the mattress. *See id.* Plaintiff kicked the metal door of his cell and yelled for assistance, but no one came. *See id*. After a shift change, an officer came to his cell but told Plaintiff that there was no way that the mattress was tampered with, because it was new. *See id*. at 9. The officer told Plaintiff that he would be receiving a misbehavior report, and did not change the mattress. *See id*. Plaintiff had to remain in a wet cell with a wet mattress for several hours. *See id*. Plaintiff finally received a new mattress from another correctional officer at 1:27 a.m., but that officer also told Plaintiff that he would receive a misbehavior report. *See id*. at 9. Another inmate told Plaintiff that he saw Defendant LaBarge bring a "bloated mattress" and a container into Plaintiff's cell shortly before Plaintiff arrived. *See id*. Approximately one week later, Plaintiff asked Defendant LaBarge why he poured water inside his mattress, but Defendant LaBarge denied doing so. *See id*. at 10. Defendant LaBarge called Plaintiff "a piece of shit spic who likes to shoot feces [and] made a comment about taking the plaintiff to the hospital (infirmary) where no cameras are." *See id*. Plaintiff "understands that the hospital at the facility is where excessive force and assault & battery against inmates take place." *See id*. Plaintiff alleges that Defendant LaBarge soaked his mattress with water "in retaliation for reasons as to why the plaintiff was emergency transferred [from Fishkill C.F.] and put on his gallery." *See id*. at 48.

On January 11, 2012, Defendant Uhler came to Plaintiff's cell and told Plaintiff that he

4

was aware of Plaintiff's attempted assault against a correctional officer at Fishkill C.F. *See id*. at 10. Defendant Uhler told Plaintiff, "you are in my house now and you['re] going to pay." *See id*. Defendant Uhler "guaranteed [that] plaintiff will have a miserable time in [Uhler's] jail." *See id*. at 11. Later that day, Defendant Uhler ordered that a more secure hatch cover (the "Hatch Order") be placed on Plaintiff's cell door. *See id*. at 11. Defendant Uhler stated in the Hatch Order that it was issued because of Plaintiff's "disruptive behavior" and was to remain in place until Defendant Uhler withdrew it. *See id*. Plaintiff claims that the Hatch Order, which remained in place until May 21, 2012, was improperly issued, and was not reviewed periodically as required by state regulations. *See id*. at 11-14. Plaintiff alleges that the imposition of the Hatch Order negatively impacted the availability of programs and privileges for him. *See id*. at 13-14.

On January 13, 2012, Plaintiff received a copy of the misbehavior report issued by staff at Fishkill C.F. regarding the January 10, 2012 incident with Sergeant Carbone. *See id*. at 14. Plaintiff was assigned an assistant to help with his Tier III hearing, but the assistant "was bias[ed] & partial in recovering paperwork at the direction of defendant Uhler." *See id*. at 15-18.

On January 25, 2012, correctional officers arrived at Plaintiff's cell to escort him to the Tier III hearing being conducted by Defendant Uhler. *See id*. at 18. The correctional officers stated that, per order of Defendant Uhler, they were to handcuff Plaintiff behind his back, by having Plaintiff put his arms out through the hatch. *See id*. Plaintiff told them that to do so would cause further injury to Plaintiff's "documented" shoulder injuries. *See id*. Plaintiff asked the correctional officers to check his medical records, which they did not do. *See id*. The correctional officers left Plaintiff's cell and indicated that Plaintiff refused to cooperate. *See id*. Nurse Travers notified Defendant Uhler that Plaintiff had medical issues with both shoulders, but Defendant Uhler disregarded the information. *See id*. at 19. On January 30, 2012, correctional

5

officers again came to Plaintiff's cell to escort him to his Tier III hearing. *See id*. at 21. The officers told Plaintiff that, per Defendant Uhler, he was again to be handcuffed behind his back. *Id*. Plaintiff was told that he would not be given another chance to comply with the order. *See id*. at 21. Plaintiff complied, and in doing so, his left shoulder was re-injured. *See id*.

Plaintiff alleges that Defendant Uhler conducted the Tier III disciplinary hearing for the Fishkill C.F. misbehavior report, and denied Plaintiff due process in the course of the Tier III hearing by, among other things, denying Plaintiff the right to call witnesses and introduce evidence, exhibiting bias against Plaintiff, relying on a videotape which Plaintiff had been told did not exist, and removing Plaintiff from the hearing without cause. *See id*. at 20-29. Defendant Uhler found Plaintiff guilty of all charges, except one, and sentenced him to the punitive "loaf" diet for a period of fourteen days. *See id*. at 24. Plaintiff alleges that the loaf diet caused stomach cramps and diarrhea and he "had to refuse it, & only ate cabbage which caused significant weight loss within the 14 days." *See id*. at 39.

Plaintiff wrote to Defendant Rock, who had appointed Defendant Uhler to conduct Plaintiff's Tier III hearing, requesting discretionary review of the Tier III hearing and providing details of Defendant Uhler's misconduct in connection with the hearing. *See id*. at 29-31. Plaintiff also told Defendant Rock that his rights had been violated in retaliation for an incident at Fishkill C.F. of "which defendant Uhler was informed about," and advised Defendant Rock about the incident with his wet mattress and "threats made by Uhler on January 11, 2012." *See id.* at 30. Defendant Rock responded to Plaintiff's letter, concurring with the penalty imposed by Defendant Uhler after the Tier III hearing and refusing any modification. *See id.* at 31. Accordingly, Defendant Rock told Plaintiff that an "appeal to Albany provides an in depth review of the hearing and [would] be more suitable." *See id.*

6

Plaintiff alleges that Defendant Rock's "culpability" as a "supervisory official came by way of learning of the unlawful hearing procedures by plaintiff through a letter" wherein Plaintiff detailed the defects, including retaliatory motive and bias, but "fail[ing] to remedy the wrong." *See id*. at 33. Instead, Defendant Rock told Plaintiff "to appeal to Albany for an indepth review which take[s] 60 days for a decision to be reached." *See id*. at 33. Plaintiff claims that "[a]n appeal to Albany would be appropriate if the punishment given by Defendant Uhler was (SHU) Special Housing Unit incarceration, and[/]or, withholding of goodtime." *See id*. Plaintiff asserts that Defendant Uhler imposed the 14-day loaf diet as the penalty because, "due to the punishment being immediately implemented," it would be "completed by the time the appeal process would take its course." *See id*. Construed liberally, Plaintiff claims that Defendant Uhler imposed the 14-day loaf punishment to thwart Plaintiff's appeal to Albany, resulting in Plaintiff being unable to secure a full investigation into the hearing or have the punishment "overturned."[3] *See id*. at 34. Although Defendant Rock did not create Defendant Uhler's alleged "policy," Defendant Rock "learned of the illegally practiced policies used by defendant Uhler against the plaintiff and other inmates . . . but continued to allow [Defendant Uhler] to use this type of custom." *See id*. at 34-35. Defendant Rock also "refused to resolve" or investigate "his part" of Plaintiff's grievances. *See id*. at 46.

Defendant Prack, on behalf of Defendant Commissioner Fischer, received Plaintiff's appeal from the Tier III hearing. *See id.* at 37. Plaintiff informed Defendant Prack of the "many

---

[3] Plaintiff alleges that Defendant Uhler "intentionally did not use the punishment of extra (SHU) time and subtraction of goodtime, because the appeal process within Albany review [would include] an indepth investigation into the hearing for violations of regulations and policy regarding procedural defects." *See* Dkt. No. 9 at 34. The fact that Plaintiff's sentence was complete before an appeal could be concluded would not prevent Plaintiff from appealing the sentence in an attempt to have it expunged from his record. Indeed, Plaintiff himself recognizes that this option was open to him. *See id.* at 37.

7

violations" committed by Defendant Uhler in connection with the hearing. *See id*. Defendant Prack affirmed the result of the Tier III hearing. *See id*. at 37. Plaintiff claims that Defendant Prack's "culpability" as a "supervisory official is established when he learned of the violations through the appeal by plaintiff and failed to remedy the wrong" and "failed to act on information indicating that unconstitutional acts were occurring." *See id*. at 38.

Moreover, Plaintiff alleges that Defendant Fischer, as Commissioner of DOCCS, is "responsible for the in depth review of the Tier III hearing on appeal to determine if a constitutional violation occurred during the hearing [and] failed to remedy the wrong of the hearing after listening to the hearing tape." *See id*. at 42.

Plaintiff asserts eight causes of action against Defendants. *See id*. at 46-50. Liberally construed, Plaintiff asserts the following claims: (1) First Amendment retaliation claims against Defendant Uhler (Counts 1, 2); (2) a First Amendment retaliation claim against Defendant LaBarge (Count 3); (3) an Eighth Amendment claim that Defendant Uhler was deliberately indifferent to his serious medical needs and/or subjected Plaintiff to cruel and unusual punishment when he directed that Plaintiff be handcuffed behind his back (Count 4); (4) an Eighth Amendment conditions-of-confinement claim against Defendant LaBarge regarding the wet mattress (Count 5); (5) a Fourteenth Amendment due process claim against Defendant Uhler regarding the imposition of the Hatch Order (Counts 2, 6); (6) a Fourteenth Amendment claim that Defendant Uhler denied Plaintiff due process at his Tier III hearing (Counts 2, 7); and (7) a claim that Defendants Rock, Prack, and Fischer failed to remedy Defendant Uhler's misconduct in connection with the Tier III hearing after being informed of it through Plaintiff's appeal (Count 8). *See id*.

### *1. Due Process Claims Against Defendant Uhler Relating to Plaintiff's Tier III Disciplinary Hearing*

8

As Plaintiff was advised in the October Order:

> To successfully state a claim under Section 1983 for denial of due process in a disciplinary hearing, a plaintiff must allege facts plausibly suggesting that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998), *cert. denied*, 525 U.S.907 (1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). To establish a liberty interest, a plaintiff must allege facts plausibly suggesting that (1) the State actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see also Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the general population in the facility, as well as those in administrative and protective confinement. *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484); *see also Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999). When assessing the severity of the hardship imposed, a court should, where appropriate, take into account both the duration and the conditions of the confinement. *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

*See* Dkt. No. 6 at 6-7.

Plaintiff alleges in the amended complaint, as he did in the original complaint, that Defendant Uhler denied Plaintiff due process at a Tier III hearing and sentenced Plaintiff to fourteen days on the punitive loaf diet. *See* Dkt. No. 9 at 20-29. As stated in the October Order, however, "'[t]he Second Circuit has held that the imposition of a loaf diet does not impose an atypical and significant hardship on inmates, even where the inmate alleges that the diet caused severe stomach pain and weight loss.' *DeBlasio v. Rock*, No. 9:09-CV-1077, 2011 WL 4478515, *18 (N.D.N.Y. Sept. 26, 2011) (quoting *McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004));

*see also Dawes v. Kelly*, No. 01-CV-6276, 2004 WL 2284885, *3 (W.D.N.Y. Oct. 7, 2004) (finding no liberty interest, and thus no cognizable due process claim, in being sentenced to a twenty-eight day restricted diet)." *See* Dkt. No. 6 at 7.  Thus, Plaintiff has failed to state a due process claim against Defendant Uhler with respect to the Tier III hearing.

As a result, Plaintiff's Fourteenth Amendment claims that Defendant Uhler denied him due process at a Tier III disciplinary hearing (Counts 2, 7) are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim on which relief may be granted.

### *2. Plaintiff's Claims Against Defendant LaBarge*
#### *a. First Amendment Retaliation Claim*

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "'(1) that the speech or conduct at issue was protected, (2) that the Defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.'"  *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Plaintiff alleges that Defendant LaBarge soaked Plaintiff's mattress with water "in retaliation for the incident" at Fishkill C.F., which incident resulted in Plaintiff's "emergency" transfer to Upstate C.F. *See* Dkt. No. 9 at 44. The incident to which Plaintiff refers is his own alleged misconduct at Fishkill C.F., namely allegedly throwing urine at a correctional officer. In apparent support of his retaliation claim against Defendant LaBarge, Plaintiff alleges that Defendant LaBarge called Plaintiff "a piece of shit spic who likes to shoot feces." *See id*. at 10. In order to assert a valid First Amendment retaliation claim, Plaintiff must have "engaged in constitutionally protected conduct." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citation omitted). Clearly, throwing urine at a correctional officer does not amount to constitutionally protected conduct.

Even if Plaintiff could allege that he previously engaged in constitutionally protected conduct, to meet the second prong of the retaliation test, Plaintiff must allege that Defendant took adverse action against him as a result of that constitutionally protected conduct. The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted) (omission in original). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *See id.* Conduct that is *de minimis* does not give rise to actionable retaliation. What is *de minimis* varies according to context. *See Dawes*, 239 F.3d at 493. As the Second Circuit has pointed out, "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes,* 239 F.3d at 491 (quoting *Thaddeus-X v. Blatter,* 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a

11

person of ordinary firmness from continuing to engage" in a protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection."  *Dawes,* 239 F.3d at 493.

Here, Plaintiff claims that Defendant LaBarge soaked Plaintiff's mattress with water, and that the mattress was not replaced for a period of approximately five hours, which "caused Plaintiff not to sleep for several hours."  *See* Dkt. No. 9 at 8-9, 44.  Defendant LaBarge's alleged misconduct of placing a wet mattress in Plaintiff's cell, which resulted in Plaintiff losing sleep for "several hours," is at best *de minimis* and does not constitute adverse action.  Plaintiff also alleges that when he tried to complain about the wet mattress, two correctional officers (who are not named as defendants) threatened him with disciplinary action and, a week later, Defendant LaBarge made a veiled threat to assault Plaintiff.  *See id*. at 9-10.  However, "verbal threats . . . do not rise to the level of adverse action."  *Bartley v. Collins*, No. 95-CV-10161, 2006 WL 1289256, \*6 (S.D.N.Y. May 10, 2006) (citing *Dawes*, 239 F.3d at 493 ("Not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment"); *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim."); *Williams v. Muller*, No. 98 Civ. 5204, 2001 WL 936297, \*4 (S.D.N.Y. Aug. 17, 2001) (holding that the defendant's "alleged spreading of rumors [that] plaintiff claims . . . were intended to incite the inmates to harm plaintiff . . . do not give rise to a retaliation claim"); *Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, \*7 (S.D.N.Y. May 16, 2002) (finding that an allegation that corrections counselor expressed his dislike for inmates who file civil lawsuits, and later came to the plaintiff's cell and said "Green Haven is an open battlefield, so be

careful" is insufficient to state a retaliation claim)). Thus, despite liberally construing Plaintiff's amended complaint, the Court finds that he has failed to state a plausible retaliation claim against Defendant LaBarge.

As a result, Plaintiff's First Amendment retaliation claim against Defendant LaBarge (Count 3) is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim on which relief may be granted.

### *b. Eighth Amendment Conditions-of-Confinement Claim*

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom.*, *Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981) (citation omitted). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and

subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985); *see also Jolly*, 76 F.3d at 480, and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

> Where . . . conditions of confinement do not result "in unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities," the United States Supreme Court has held that such deprivations do not rise to the level of a violation of the Eighth Amendment. Indeed, courts within the Second Circuit have routinely held that . . . deprivations [such as] no access to water and electricity for twenty-two hours, do not constitute an Eighth Amendment violation. *See e.g., McNatt v. Unit Manager Parker*, No. 3:99CV1397 AHN, 2000 WL 307000, at *4 (D. Conn. Jan.18, 2000) (totality of conditions in restrictive housing unit, including stained, smelly mattresses; unclean cell; no bedding for six days; no cleaning supplies for six days; no toilet papers for one day; no toiletries or clothing for six days; no shower shoes; dirty showers; cold water that did not function properly; and smaller food portions, while not pleasant, did not rise to the level of Eighth Amendment violation); *Fisher v. Department of Correction*, No. 92 Civ. 6037(LAP), 1995 WL 608379, at *5 (S.D.N.Y. Oct.16, 1995) (prison's failure to provide inmate with toothpaste and soap for eight consecutive days, lighting for twenty days, and hot food 65 percent of the time did not rise to the level of Eighth Amendment violation).

*Beckford v. New York State Office of Mental Health*, No. 06-CV-0561, 2010 WL 1816689, *12 (W.D.N.Y. May 3, 2010).

Here, Plaintiff alleges that he was put in a cell with a wet mattress and did not receive a dry mattress for approximately five hours. *See* Dkt. No. 9 at 8-9. This allegation, even if accepted as true, is simply insufficient to state a cruel and unusual punishment claim under the Eighth Amendment. At best, Plaintiff alleges that he lost "several hours" of sleep. Plaintiff's claim does not constitute a serious deprivation of basic human needs. *See Rhodes*, 452 U.S. at

14

347 (holding that routine discomfort and restrictive or even harsh prison conditions "are part of the penalty that criminal offenders pay for their offenses against society" ); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

As such, Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendant LaBarge (Count 5) is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim on which relief may be granted.

### *3. Plaintiff's Claims Against Defendants Rock, Prack, and Fischer*

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (citation and internal quotation marks omitted). Therefore, a complaint that fails to allege how a specific defendant violated the law or injured the plaintiff should be dismissed. *See*, e.g., *Hemmings v. Gorczyk*, 134 F.3d 104, 109 n.4 (2d Cir. 1998) (citation omitted). Since a defendant's conduct must be a proximate cause of the alleged section 1983 violation, "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *De Jesus v. Albright*, No. 08 Civ. 5804, 2011 WL 814838, *5 (S.D.N.Y. Mar. 9, 2011) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003)) (internal quotation marks omitted); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (holding that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (same).

Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual (1) has directly participated

15

in the challenged conduct; (2) after learning of the violation through a report or appeal, has failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *See Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007) (citation omitted); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to allege involvement of a supervisor. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

Where a supervisory employee knows or reasonably should know of the existence of facts revealing a constitutional deprivation and, by virtue of his or her failure to properly investigate or correct the matter, allows the wrongdoing to continue, or fails to prevent additional constitutional violations despite authority to do so, that defendant may face liability under section 1983. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *see also Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir. 1989) (indicating that supervisory liability was proper where "an official has actual or constructive notice of unconstitutional practices" by his or her subordinates "and demonstrates gross negligence or deliberate indifference by failing to act").

As it did in the October Order, the Court has again found that Defendant Uhler's actions with respect to Plaintiff's Tier III hearing, which resulted in the fourteen-day imposition of the punitive loaf diet, even if true, do not rise to a level of constitutional significance. *See* Part II.B.1., *supra*; *see also* Dkt. No. 6 at 6-8. It logically follows that Plaintiff's allegations against Defendants Rock, Prack, and Fischer – (1) that they failed to investigate and correct Defendant Uhler's alleged misconduct in connection with the Tier III hearing, or (2) that they affirmed the

16

imposition of a fourteen day punitive loaf diet – also fails to allege constitutional deprivations. *See Linares v. Mahunik,* No. 9:05-CV-0625 (GLS/RFT), 2006 WL 2595200, *11 (N.D.N.Y. Sept. 11, 2006) (holding that the plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was] no constitutional violation"). Simply put, with respect to the due process claim against Defendant Uhler arising from the Tier III hearing, there is no unconstitutional conduct for which Defendants Rock, Prack, or Fischer, as supervisors, can be held responsible. *See Toole v. Connell*, No. 9:04-CV-0724, Report-Recommendation, 2008 WL 4186334, *7 (N.D.N.Y. Sep. 10, 2008) (Peebles, M.J.), *adopted*, 2008 WL 4186334, *1 (Kahn, J.) (holding that a supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983); *see also Hameed v. Mann*, 57 F.3d 217, 224 (2d Cir. 1995) (finding that a defendant who affirmed the result of a disciplinary hearing was entitled to dismissal of claims against him where the plaintiff failed to allege constitutional violations regarding the disciplinary hearing).

Insofar as Plaintiff claims that in his appeal from the Tier III hearing, he "made [these supervisory] defendants aware" that Defendant Uhler had Plaintiff "awkwardly put in restraints" causing injury to Plaintiff's shoulder, this also fails to state a claim against Defendants Rock, Prack, or Fischer. A "failure to remedy" theory of liability is not available against a supervisor with respect to discrete and completed violations such as the cruel and unusual restraint claim alleged here. *See Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (citing *Blyden v. Mancusi*, 186 F.3d 252, 259, 264 (2d Cir. 1999); *Wright*, 21 F.3d at 501); *see also Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation")*; Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong

must have been ongoing or otherwise capable of mitigation at the time the supervisory official was apprised thereof").

Plaintiff also claims that Defendant Rock failed to address his grievances. However, it is well-established that a prison inmate has no constitutional right of access to such an internal grievance process. *See Rhodes v. Hoy*, No. 05-CV-0836, 2007 WL 1343649, *6 (N.D.N.Y. May 5, 2007) (Scullin, J.) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); *see also Davis v. Buffardi*, No. 01-CV-0285, 2005 WL 1174088, *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[P]articipation in an inmate grievance process is not a constitutionally protected right"); *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance procedures are not required by the Constitution" and, therefore, failure to see to it that grievances are properly processed does not create a claim under section 1983). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

In light of the foregoing, Plaintiff's claims against Defendants Rock, Prack, and Fischer (Count 8) are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim on which relief may be granted.

### *4. Remaining Claims Against Defendant Uhler*

Mindful of the requirement to liberally construe *pro se* pleadings, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff alleges enough to warrant a responsive pleading from Defendant Uhler to the following claims set forth in the amended complaint: (1) the First Amendment retaliation claims against Defendant Uhler (Counts

1, 2); (2) the Eighth Amendment claim that Defendant Uhler was deliberately indifferent to Plaintiff's serious medical needs and/or subjected Plaintiff to cruel and unusual punishment when he directed that Plaintiff be handcuffed behind his back (Count 4); and (3) the Fourteenth Amendment due process claim against Defendant Uhler regarding the imposition of the Hatch Order (Counts 2, 6). In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### III. CONCLUSION

**WHEREFORE**, the Court hereby

**ORDERS** that the following claims are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted: (1) the First Amendment retaliation claim against Defendant LaBarge (Count 3); (2) the Eighth Amendment conditions-of-confinement claim against Defendant LaBarge regarding the wet mattress (Count 5); (3) the Fourteenth Amendment claim that Defendant Uhler denied Plaintiff due process at his Tier III hearing (Counts 2, 7); and (4) all claims against Defendants Rock, Prack, and Fischer (Count 8); and the Court further

**ORDERS** that Defendants LaBarge, Rock, Prack, and Fischer are **DISMISSED without prejudice** for the reasons set forth above; and the Court further

**ORDERS** that, **within thirty (30) days** of the filing date of this Decision and Order, Defendant Uhler, or his counsel, file a response to the following claims set forth in the amended complaint: (1) the First Amendment retaliation claims against Defendant Uhler (Counts 1, 2); (2) the Eighth Amendment claim that Defendant Uhler was deliberately indifferent to Plaintiff's serious medical needs and/or subjected Plaintiff to cruel and unusual punishment when he directed that Plaintiff be handcuffed behind his back (Count 4); and (3) the Fourteenth

Amendment due process claim against Defendant Uhler regarding the imposition of the Hatch Order (Counts 2, 6). All remaining claims against Defendant Uhler are **dismissed with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 16, 2013
　　　　Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge