**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALBERT WEATHERS,

       Plaintiff,

 v.              No. 12-CV-982
                 (MAD/CFH)
D. UHLER, Dep. of Security, individually
and officially,

       Defendant.[1]

---

**APPEARANCES:**       **OF COUNSEL:**

ALBERT WEATHERS
Plaintiff Pro Se
10-B-0094
Coxsackie Correctional Facility
Box 999
Coxsackie, New York 12051

HON. ERIC T. SCHNEIDERMAN    JAMES SEAMAN, ESQ.
Attorney General for the       Assistant Attorney General
 State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

 Plaintiff pro se Albert Weathers ("Weathers"), an inmate currently in the custody of the

---

 [1] By Decision and Order dated July 16, 2013, defendants Rock, Fischer, Prack, and LaBarge were dismissed from this action along with the Fourteenth Amendment claim that defendant Uhler had denied Weathers due process at a Tier III hearing. Dkt. No. 19.

 [2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant Uhler, a DOCCS employee, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. Am. Compl. (Dkt. No. 9). Presently pending is Uhler's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 21. Weathers opposes this motion. Dkt. No. 28. Uhler replied to the opposition. Dkt. No. 30. For the following reasons, it is recommended that Uhler's motion be granted in part and denied in part.

## I. Background[3]

The facts are related herein in the light most favorable to Weathers as the non-moving party. See subsection II(A) infra.

On January 10, 2012, at Fishkill Correctional Facility ("Fishkill"), non-party Sergeant Carbone accused Weathers of attempting to urinate on him. Am. Compl. ¶ 17. Weathers denied the accusation as retaliation for filing grievances against Carbone and shortly thereafter was transferred to Upstate Correctional Facility ("Upstate"). Id. ¶¶ 13, 18, 25. During the transport, Weathers overheard a correctional officer stating that defendant Uhler, deputy superintendent of security, had been notified of the incident involving Carbone. Id. ¶¶ 4, 25.

On January 11, 2012, Uhler went to Weathers's cell, stated he was aware of

---

[3] Weathers refers to exhibits that are not attached to his amended complaint. However, exhibits are submitted to the Court with his original complaint as well as subsequent to the filing of the amended complaint. These exhibits contain medical records that generally support Weathers's contention of having shoulder injuries. Dkt. No. 1-1 at 90, 92, 94–108, 110–111, 113–118; see generally Dkt. Nos. 15-1—15-3.

Weathers's attempt to assault Carbone and "you are in my house now and your [sic] going to pay." Am. Compl. ¶ 43. Weathers denied the incident involving Carbone. Id. ¶ 44. Uhler continued, stating he "guaranteed [Weathers] will have a miserable time in his jail," then smiled.[4] Id. ¶ 45.

On January 12, 2012, Uhler ordered a more secure hatch cover ("Hatch Order") be affixed over the feed-up hatch to Weathers's cell door. Am. Compl. ¶ 47. The imposition of the Hatch Order also deprived Weathers of certain programs and privileges.[5] Id.; Resp. (Dkt. No. 28) at 6–7; Dkt. Nos. 1-1 at 31; 28 at 19. Non-participation in these programs affected Weathers's parole release hearing. Am. Compl. ¶ 59. The Hatch Order indicated that it was issued based on Weathers's disruptive behavior and would be in effect until Uhler withdraws it. Id. ¶ 48; Dkt. No. 1-1 at 25. Weathers claims the Hatch Order, which remained in place until May, 21, 2012, was improperly issued and not periodically reviewed as required by regulations. Am. Compl. ¶¶ 49–50, 56, 58.

On January 13, 2012, Weathers received a copy of a misbehavior report regarding the January 10, 2012 incident with Carbone. Am. Compl. ¶¶ 61, 65. On January 25, 2012, correctional officers arrived at Weathers's cell to escort him to a Tier III disciplinary hearing for that report. Id. ¶ 75. Uhler instructed the correctional officers to handcuff Weathers behind his back by having Weathers put his arms out through the hatch. Id. ¶ 76.

---

[4] Inmate Clivens Celestin overheard this conversation and submitted an affidavit attesting to the facts as alleged by Weathers. Am. Compl. ¶ 46; Dkt. No. 14 (inmate affidavit).

[5] This deprivation resulted in Weathers being disqualified to obtain or access General Education Development ("G.E.D.") preparation, time cut, recreation, showers, Alcohol and Substance Abuse Treatment ("A.S.A.T."), Aggression Replacement Training ("A.R.T."), cell study, and personal property. Am. Compl. ¶ 59.

3

Weathers responded that this manner of restraint would aggravate his documented shoulder injuries. Id. Weathers asked the officers to check his medical records but they refused. Id. ¶ 78. The officers further indicated that Weathers had disobeyed an order. Id. Non-party Nurse Travers notified Uhler of Weathers's shoulder injuries but Uhler disregarded that information. Id. ¶ 79. Weathers then sent a letter to Uhler explaining his shoulder injuries, the difficulties with being handcuffed behind his back, and his request to participate at his disciplinary hearing. Id. ¶ 83; Dkt. No. 1-1 at 31–32.

On January 30, 2012, correctional officers again attempted to handcuff and escort Weathers to the disciplinary hearing in the same manner as previously instructed by Uhler. Am. Compl. ¶ 87. Weathers was informed that this was his last opportunity to comply with the order. Id. ¶ 88. Weathers complied but re-injured his left shoulder. Id. ¶¶ 90–91. Non-party Nurse Marlow was notified and she prescribed Weathers with pain medication. Id. Weathers was given a magnetic resonance imaging ("MRI") test. Id. ¶¶ 80, 91. His left shoulder was noted to have limited mobility laterally, vertically, and backwards. Id. ¶ 81. His right shoulder had similar conditions. Id. ¶ 82. An orthopedic doctor recommended surgery. Id. ¶¶ 82, 183.

At the disciplinary hearing, Uhler stated that Weathers's medical records show no indication of any shoulder injury. Am. Compl. ¶ 92. Weathers alleged that Uhler had acknowledged he was aware of Weathers's shoulder conditions. Resp. at 13. Weathers stated that "he did not want to lip wrestle with [Uhler] because he knows that he has a hard on for me for what happen[ed] at Fishkill . . . ." Am. Compl. ¶ 92. Uhler removed Weathers from the hearing and accused Weathers of calling him names. Id. ¶ 94. Weathers alleged that Uhler improperly conducted the disciplinary hearing, which was untimely commenced,

4

by denying him the right to call witnesses and introduce evidence, exhibiting bias towards him, relying on a videotape which Weathers was told it did not exist, and removing Weathers from the hearing without cause. Id. ¶¶ 93–95, 97, 102–103, 105–106. When released from the restraints, Weathers experienced severe shoulder pain. Id. ¶ 183. On January 31, 2012, Weathers was found guilty of all counts, except for one, and placed on a "loaf" diet for fourteen days as punishment. Id. ¶¶ 100–01, 155–56.

On March 8, 2013, Weathers received a left shoulder replacement at the Alice Hyde Hospital. Resp. at 14–15; Dkt. No. 20. Weathers was also ordered to have his right shoulder replaced. Resp. at 15.

## II. Discussion

Weathers contends that Uhler violated his First Amendment right against retaliation for attempting to urinate on Carbone when Uhler threatened him, issued a Hatch Order against him without conducting periodic reviews, and improperly ordered a manner of restraint that caused shoulder injuries.[6] Am. Compl. ¶ 192. Weathers further contends that Uhler violated his Eighth Amendment rights against deliberate indifference by ordering that he be handcuffed behind his back while disregarding knowledge of Weathers's shoulder injuries. Id. ¶ 196. Lastly, Weathers claims that Uhler's unjustified and unreviewed Hatch Order violated his Fourteenth Amendment due process rights. Id. ¶¶ 193, 197. Uhler argues that all claims against him should be dismissed with prejudice because, after filing an amended

---

[6] Weathers also alleged that Uhler retaliated against him by violating his due process rights in connection to a disciplinary hearing. Am. Compl. ¶ 192. As noted, the Fourteenth Amendment procedural due process claim against Uhler based on a disciplinary hearing was dismissed from this action. See supra note 1.

5

complaint, Weathers still failed to state a claim upon which relief can be granted.

## A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "plausible on its face." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 680.

Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any

documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted). However, there are instances where the court may consider documents outside those previously referenced, including when the documents are only "partially quoted in [the] complaint . . .; integral to [the] complaint . . .; [or] relied upon . . . in drafting the complaint . . . ." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal quotation marks and citations omitted). Specifically, the following documents may be considered when construing a complaint's pleading sufficiency:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

Weiss v. Incorp. Village of Sag Harbor, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (citations omitted).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with

7

> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). It follows that,

> the mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's paper in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.

Robles v. Bleau, No. 07-CV-0464, 2008 WL 4693153, at *6 & n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases).[7]

### B. First Amendment

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Davis v.

---

[7] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

Goord, 320 F.3d 346, 353 (2d Cir. 2003). "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008).

"Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. Jackson, 549 F. Supp. 2d at 214–15. Therefore, conclusory allegations alone are insufficient. Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")). If the plaintiff establishes these elements, the burden shifts to the defendants to show by a preponderance of the evidence that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. Graham v. Henderson, 89 F.3d 75,

9

79 (2d Cir. 1996).

In this case, assuming the truth of the plaintiff's allegations, Weathers has failed to state a retaliation claim. Weathers contends that Uhler's actions were done in retaliation for the incident involving Carbone at Fishkill. However, Weathers has failed to allege a constitutionally protected activity for the First Amendment analysis. Gill, 389 F.3d at 380. There is an absence of legal authority to support the claim that spraying urine onto a correctional officer is a constitutionally protected activity; in fact, it is a crime under New York law. Cf. People v. Stokes, 95 N.Y.2d 633, 635 (2001) ("While an inmate at the Southport Correctional Facility, defendant was accused and convicted after trial of aggravated harassment of an employee by an inmate in violation of Penal Law § 240.32, a class E felony, for allegedly spraying a mixture of excrement and urine on a correction counselor.").[8] A plaintiff must allege that the defendant took action against him in response to his own constitutionally or federally protected activity. Taylor v. Fischer, 841 F. Supp. 2d 734, 737 (W.D.N.Y. 2012) (citation omitted) (concluding that plaintiff's not-guilty disposition for a disciplinary hearing was not a protected activity for purposes of a retaliation claim). Because Weathers fails to allege a constitutionally protected activity, and thus failing to state retaliation, it is of no moment whether adverse action was taken against Weathers or a causal connection exists between that adverse action and a protected activity.

---

[8] To the extent that Weathers was attempting to allege that Uhler retaliated against him based on a false accusation, such a claim must fail. This Circuit has indeed held that an inmate may have a constitutional right against false accusations that are made in retaliation for exercising a constitutional right. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588–90 (2d Cir. 1988)). However, that retaliation claim would be made against Carbone, not Uhler, because Carbone was the accuser. Accordingly, Weathers has failed to allege the first prong of the retaliation claim based on a false accusation.

10

Furthermore, since Weathers had already been afforded an opportunity to amend his complaint, he need not be afforded another opportunity to amend his retaliation claim prior to dismissal. Smith v. Fischer, No. 07-CV-1264, 2009 WL 632890, at *5 n.20 (N.D.N.Y. Feb. 2, 2009) (citations omitted).

Accordingly, Uhler's motion on this ground should be granted.

### C. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Since there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3)

11

the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir. 2003) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Here, Weathers has plausibly alleged the objective prong of the Eighth Amendment claim against Uhler.[9] Weathers alleged that his shoulder injuries are well-documented. Weathers complained to multiple correctional officers that he could not have his hands handcuffed behind his back. Despite such pleas, Weathers submitted to Uhler's order and sustained severe shoulder pain as a result. Weathers further alleged that after January 30, 2012, an MRI showed that his shoulders had a limited range of motion and an orthopedic doctor had recommended required surgery. Given these factual allegations where a doctor

---

[9] Uhler proceeds in his motion with the assumption that Weathers has shown a sufficiently serious medical condition. Def.'s Mot. (Dkt. No. 21-1) at 16.

12

has recommended treatment and Weathers complained of severe pain, Weathers has plausibly alleged a serious medical condition. Brock, 315 F.3d at 162–63.

Turning to the subjective prong, Weathers alleged that Uhler exhibited deliberate indifference to his serious medical needs when Uhler ordered Weathers be handcuffed behind his back on January 25, 2012 and January 30, 2012. After the January 25, 2012 incident, a nurse informed Uhler of Weathers's shoulder injuries and Weathers himself wrote to Uhler explaining how his shoulder injuries prevented him from being handcuffed in a certain manner. However, Uhler disregarded such information. "It is well-established that handcuffing an inmate is a regular incident of prison life which does not per se violate the Eighth Amendment." Vallade v. Fischer, No. 12-CV-231M, 2012 WL 4103864, at *3 (W.D.N.Y. Sept. 13, 2012) (citing Graham v. Fries, No. 93–CV–3371 (JG), 1996 WL 1057212, at *11 (E.D.N.Y. Oct. 16, 1996) ("[T]he use of shackles and handcuffs (whether in front or in back) while moving prisoners does not constitute an extreme deprivation [under the Eighth Amendment] . . . . Handcuffing a prisoner behind his back rather than in front of his body and placing shackles on his ankles does not deprive a prisoner of a life necessity." (citation omitted))). While Weathers does not proffer any factual allegations going to how, prior to January 25, 2012, Uhler was aware that his shoulder injuries precluded him from being handcuffed in a certain manner, Weathers does allege that this information was communicated to Uhler after January 25, 2012. Despite this transfer of information, Uhler still ordered Weathers to be handcuffed behind his back on January 30, 2012. Furthermore, Weathers alleges that at his disciplinary hearing, Uhler stated he was aware of Weathers's shoulder injuries even though the medical records do not show such injuries. Accepting all factual allegations in the complaint as true, Weathers has also plausibly

alleged that on January 30, 2012, Uhler was aware of Weathers's serious medical conditions yet still instructed officers to handcuff Weathers in a way that would aggravate such conditions. Selevan, 584 F.3d at 88.

Accordingly, Uhler's motion on this ground should be denied.

### D. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted).

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483–84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

Here, Weathers has failed to establish a liberty interest for the purpose of stating a due process claim against Uhler. Weathers alleges that his due process rights were violated

because Uhler unjustifiably imposed a hatch cover over feed-up hatch without periodic assessment of his good behavior as basis for removing it. However, even assuming the truth of these allegations, courts in this Circuit have found that inmates do not have a constitutionally protected liberty interest in being confined in an unshielded cell. Figueroa v. Storm, No. 07-CV-18S, 2011 WL 1598922, at *6 (W.D.N.Y. Apr. 28, 2011) (Dkt. No. 21-13) (citing Breazil v. Barlett, 998 F. Supp. 236, 243 (W.D.N.Y. 1997); DeMaio v. Mann, 877 F. Supp. 89, 93 (N.D.N.Y. 1995); Young v. Scully, 1993 WL 88144, at *3 (S.D.N.Y. Mar. 22, 1993)). Furthermore, Weathers does not proffer any facts to show that imposition of the hatch cover was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)); see also Samms v. Fischer, No. 10-CV-349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) ("Very few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process. In Sandin v. Conner, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs." (citations omitted)).

To the extent Weathers was attempting to allege that the imposition of the hatch cover adversely affected his parole release hearing, thereby violating his due process rights, the Second Circuit has determined that because New York's parole scheme delegates discretion to the Parole Board in granting an inmate parole, that scheme does not create a due process liberty interest in parole. Barna v. Travis, 239 F.3d 169, 170–71 (2d Cir. 2001) (citing Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 11–13 (1979)). Moreover, were Weathers to base his due process claim on the denial of certain

15

programming, such a claim must fail because inmates do not have a constitutional right to participate in prison programs.  See Boothe v. Hammock, 605 F.2d 661, 664 (2d Cir. 1979); see also Gissendanner v. Menifee, 975 F. Supp. 249, 251 (W.D.N.Y. 1997) (holding that "'a prisoner does not hold a protected interest in [prison] programs'" (citations omitted)).  As such, Weathers has failed to allege a due process claim against Uhler.  Because Weathers had already been afforded an opportunity to amend his complaint, he need not be afforded another opportunity to amend his due process claim prior to dismissal.  Smith, 2009 WL 632890, at *5 n.20.

Accordingly, Uhler's motion on this ground should be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion to dismiss (Dkt. No. 21) be **DENIED** as to the Eighth Amendment deliberate indifference claim and all remaining claims against defendant be **DISMISSED** with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72, 6(a), 6(e).

Dated:  November 12, 2013
        Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

16